**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

FILED

DEC - 2 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLLINOIS
E. ST. LOUIS OFFICE

UNITED STATES OF AMERICA

       Respondent,

       v.

DEANDRE LEWIS

       Movant.

Criminal No: 3:98-cr-30022-NJR

## MOTION FOR SENTENCE REDUCTION
## PURSUANT TO 18 U.S.C. § 3582(c)(2)

       COMES NOW, Deandre Lewis (hereinafter "Defendant"), pro se, and hereby moves this Court, for entry of an Order granting him relief based on the "extraordinary and compelling reasons" presented herein under the First Step Act of 2018, 18 U.S.C. §3582(c)(2).

       Defendant is proceeding pro se, without legal counsel, and in light of this, Federal Courts are urged to construe his pro se pleading more leniently than motions filed by legal counsel. See, *Castro v. United States*, 540 U.S. 375, 381-83 (2003). A document filed pro se is to be liberally construed; See also, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (same).

       The Supreme Court recently ruled that District courts enjoy substantial discretion in considering all relevant information at sentencing hearings. That discretion extends to subsequent hearings modifying sentencing, as well. The First Step Act preserves this discretion, allowing the district court to reduce sentences based not only on the changes to sentencing ranges but also on other legal or factual changes that have occurred since the original sentencing. See, *Concepcion v. United States*, 2022 U.S. LEXIS 3070, (Supreme Court, June 27, 2022).

## STATEMENT OF THE CASE

The defendant was a hired gunman and pled guilty to offenses relating to the murder of Debra Abeln. *See generally United States v. Westmoreland,* 312 F.3d 302 (7th Cir. 2002). Defendant initially received a life sentence, which the Court later reduced to 450 months. Defendant is currently housed at Pollock FCI, with an anticipated release date of 07/04/ 2032.[1]

## STANDARD OF REVIEW

A defendant may bring a motion for Sentence Reduction only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A).

The 7th Circuit employs a two-step inquiry when reviewing Section 3582(c)(2) motions: (1) whether the defendant is eligible for a reduction, and (2) whether a reduction is warranted in light of the factors set forth. See, *United States v. Purnell,* 701 F.3d 1186, 1189 (7th Cir. 2012)

## DISCUSSION AND ANALYSIS

As an initial matter, Defendant has exhausted his administrative remedies. Thus, this Court may now address the merits of his motion. See, Exhibit 1 (Administrative Remedies).

## I. *Whether Defendant Qualifies for a Reduction in Sentence Pursuant to § 3582(c)(1)(A)*

Defendant submits that he qualifies for a reduction in sentence pursuant to § 3582(c)(1)(A), the applicable policy statement, and official commentary, which took effect November 1st 2023.

Amendment 814 revises §1B1.13 (colloquially referred to as the Commission's "Compassionate Release" policy statement) to reflect that a defendant is now authorized to file a

---

[1] https://www.bop.gov/inmateloc

2

motion under 18 U.S.C. §3582(c)(1)(A), making §1B1.13 applicable to both defendant-filed and BOP-filed motions.

The amendment expands the list of "extraordinary and compelling reasons" in five ways to better account for the plain language of §3582(c)(1)(A) and its legislative history, to reflect the reasons relied upon by many courts after passage of the First Step Act in the absence of a binding policy statement, and to account for recent experiences—including those pertaining to the pandemic.[2]

One of those five ways in which the Commission expanded the list is the new "Unusually Long Sentences" category which applies here.

a) *Whether Defendant Qualifies for a Sentence Reduction Pursuant to Amendment 814: §1B1.13(b)(6) and (c): New "Unusually Long Sentences" Category*

Defendant seeks relief from his unusually long sentence pursuant to Amendment 814 §1B1.13(b)(6) and (c): the New "Unusually Long Sentences" Category. For clarification on the matter, Defendant points to the Commission's statements regarding the new Unusually Long Sentences category:

> The fifth modification to the list of specified extraordinary and compelling reasons appears in new subsection (b)(6) ("Unusually Long Sentence") and permits non-retroactive changes in law (other than non-retroactive amendments to the Guidelines Manual) to be considered extraordinary and compelling reasons warranting a sentence reduction, but only in narrowly circumscribed circumstances. Specifically, where (a) the defendant is serving an unusually long sentence; (b) the defendant has served at least ten years of the sentence; and (c) an intervening change in the law has produced a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, the change in law can qualify as an extraordinary and compelling reason after the court has fully considered the defendant's individualized circumstances.
>
> One of the expressed purposes of section 3582(c)(1)(A) when it was enacted in 1984 was to provide a narrow avenue for judicial relief from unusually long sentences. S. REP. NO. 98225 (1983). Having abolished parole in the interest of certainty in sentencing, Congress recognized the need for such judicial authority. In effect, it replaced opaque Parole Commission review of every federal sentence with a transparent, judicial authority to consider reducing only a narrow subset of sentences—those presenting "extraordinary and compelling" reasons for a reduction.

[2] https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf

Subsections (b)(6) and (c) operate together to respond to a circuit split concerning when, if
ever, non-retroactive changes in law may be considered as extraordinary and compelling
reasons within the meaning of section 3582(c)(1)(A). Compare United States v. Ruvalcaba, 26
F.4th 14, 16, 26–28 (1st Cir. 2022) (holding that non-retroactive changes in sentencing law may be
considered in light of a defendant's particular circumstances), United States v. McCoy, 981 F.3d
271, 286–88 (4th Cir. 2020) (same), United States v. Chen, 48 F.4th 1092, 1098 (9th Cir. 2022)
(same), and United States v. McGee, 992 F.3d 1035, 1047–48 (10th Cir. 2021) (same), with United
States v. Andrews, 12 F.4th 255, 260–62 (3d Cir. 2021), cert. denied, 142 S. Ct. 1446 (2022)
(holding that non-retroactive changes in law are not permissible considerations), United States v.
McMaryion, 64 F.4th 257, 259–60 (5th Cir. 2023) (same), United States v. McCall, 56 F.4th 1048,
1061 (6th Cir. 2022) (en banc) (same), United States v. King, 40 F.4th 594, 595 (7th Cir. 2022)
(same), United States v. Crandall, 25 F.4th 582, 585–86 (8th Cir. 2022) (same), and United States
v. Jenkins, 50 F.4th 1185, 1198, 1198 (D.C. Cir. 2022) (same).

The Commission considered whether the foregoing split among the circuit courts of appeals was
properly addressed by the Commission, which typically resolves such disagreements when they
relate to its guidelines or policy statements, see Braxton v. United States, 500 U.S. 344 (1991), or
by the Supreme Court. In making that determination, the Commission was influenced by the fact
that on several occasions the Department of Justice successfully opposed Supreme Court review of
the issue on the ground that it should be addressed first by the Commission. See, e.g., Brief For the
United States in Opposition to Grant of Certiorari, Jarvis v. United States, No. 21-568, 2021 WL
5864543 (U.S. Dec. 8, 2021); Memorandum For the United States in Opposition to Grant of
Certiorari, Watford v. United States, No. 21-551, 2021 WL 5983234 (U.S. Dec. 15, 2021);
Memorandum For the United States in Opposition to Grant of Certiorari, Williams v. United
States, No. 21-767, 2022 WL 217947 (U.S. Jan. 24, 2022); Memorandum For the United States in
Opposition to Grant of Certiorari, Thacker v. United States, No. 21-877, 2022 WL 467984 (U.S.
Feb. 14, 2022).

The amendment agrees with the circuits that authorize a district court to consider
nonretroactive changes in the law as extraordinary and compelling circumstances
warranting a sentence reduction but adopts a tailored approach that narrowly limits that
principle in multiple ways. First, it permits the consideration of such changes only in cases
involving "unusually long sentences," which the legislative history to the SRA expressly identified
as a context in which sentence reduction authority is needed. See S. REP. NO. 98–225, at 55
(1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3238–39. ("The Committee believes that there may
be unusual cases in which the eventual reduction in the length of a term of imprisonment is
justified by changed circumstances. These would include cases of severe illness, cases in which
other extraordinary and compelling circumstances justify a reduction of an unusually long
sentence, and some cases in which the sentencing guidelines for the offense of which the defendant
[sic] was convicted have been later amended to prove a shorter term of imprisonment."). Second,
the change in law itself may be considered an extraordinary and compelling reason only where it
would produce a gross disparity between the length of the sentence being served and the sentence
likely to be imposed at the time the motion is filed. Finally, to address administrative concerns
raised by some commenters, the amendment limits the application of this provision to individuals
who have served at least 10 years of the sentence the motion seeks to reduce. Commission data
show that between fiscal year 2013 and fiscal year 2022, fewer than 12 percent (11.5%) of all
offenders were sentenced to a term of imprisonment of ten years or longer.

Subsection (b)(6) excludes from consideration as extraordinary and compelling reasons warranting
a reduction in sentence changes to the Guidelines Manual that the Commission has not made
retroactive. Public comment requested that the Commission clarify the interaction between
§1B1.13 and §1B1.10, and the Commission determined that excluding non-retroactive changes to
the guidelines from consideration as extraordinary and compelling reasons was consistent with
§1B1.10 and the Supreme Court's decision in Dillon v. United States, 560 U.S. 817 (2010).

4

To more fully address the proper role of changes in law in this context, the amendment also
adds a new subsection (c) to the policy statement. Whereas subsection (b)(6) narrowly limits
the circumstances in which a non-retroactive change in the law can constitute an
extraordinary and compelling reason that itself can warrant a reduction in sentence,
subsection (c) of the amended policy statement governs the use of changes in the law in cases
where a defendant "otherwise establishes that extraordinary and compelling reasons
warrant a sentence reduction." In those circumstances, all changes in law, including
nonretroactive amendments to the Guidelines Manual, may properly be considered in
determining the extent of a sentencing reduction. For example, a defendant's motion may
present the following circumstances: (a) commendable rehabilitation while incarcerated; (b) the
offense conduct occurred when the defendant was in his late teens or early twenties; and (c)
pursuant to intervening legislation or intervening Guidelines amendments, the sentence likely to
be imposed at the time of the motion would be lower than the sentence being served, but not
grossly so. In those circumstances, the change in law could not properly be considered an
extraordinary and compelling reason warranting a reduction in sentence. However, if the court
determines that the combination of the other two factors constitutes an extraordinary and
compelling reason, the change in law is among the broad array of factors that may properly
be considered in determining the extent of any such reduction. This aspect of the amendment
is fully consistent with Concepcion v. United States, 142 S. Ct. 2389 (2022).

https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-
amendments/202305_RF.pdf [pg.'s 7-9] emphasis added.

Defendant meets the outlined criteria in multiple ways. First, Defendant is serving an
unusually long sentence of 450 months. Assuming arguendo that Defendant's sentence is not
unusually long relative to the circumstances of his case, currently, available sentencing data
show that, in fiscal year 2021, nationally, the average sentence for murder was 244 months or
just over 20 years[3]; in stark contrast to Defendant's current 450-month sentence. Second,
Defendant has been incarcerated for more than 29 years of that sentence; and as discussed below,
there have been multiple intervening changes in law that apply to Defendant's case, including the
Supreme Court decision to make the USSG only advisory, the First Step Act of 2018,
Amendment 814 regarding sentence reductions and Amendment 821 regarding criminal history,
as well as the recent Amendment regarding youthful offenders, which absent congressional
intervention, will take effect November 1st, 2024. As discussed herein, these changes in law,
individually and/or considered in concert, produce a gross disparity between Defendant's current

---

[3] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-
publications/2022/FY21_Overview_Federal_Criminal_Cases.pdf

5

sentence and the sentence likely to be imposed at the time this motion is filed, thus satisfying the

third criterion outlined above.  Defendant will now address the changes in law as well as his

other factors for relief.

### b)  *Whether the Supreme Court's Ruling that the Sentencing Guidelines are No Longer Mandatory Qualifies as Extraordinary and Compelling*

Defendant pled guilty and was sentenced to life in prison under the then Mandatory

Sentencing Guidelines. However, because of his substantial assistance to authorities regarding

the circumstances surrounding the murder and those involved, he received an imposed sentence

of 450 months. (DE 964) pg. 13 ¶ b.

Although Defendant received a downward departure from the sentencing guidelines, his

sentence was still based on those guidelines and resulted in his unusually long sentence. The

sentencing guidelines under which Defendant was sentenced are no longer mandatory, hence a

change in law. See, *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 757-58, 160 L. Ed. 2d

621 (2005). Courts are now authorized to reduce a statutory mandatory minimum sentence under

§3582(c)(1)(A). See, *United States v. Halvon*, 26 F. 4th 566, 570 (2d Cir. 2022) (per curium)

(holding that "a mandatory minimum sentence does not preclude a District Court from reducing

a term of imprisonment on a motion for compassionate release.")

In *Booker*, the Supreme Court found the sentencing guidelines to be advisory, not

mandatory. However, *Booker* is not retroactive. United States v. Morris, 429 F. 3d 65, 72, (4th

Cir. 2005); cf. *Jones v. United States*, 431 F. Supp. 3d 740, 743 (E.D. Va 2020) (noting that by

not making *Booker* retroactive, there is a "lost generation, a group caught in a national purgatory

where individual citizens pay the penance for the constitutional errors of the sovereign.")

However, Congressional approval of Amendment 814 §1B1.13(b)(6) and (c) expressly

allows that, if a defendant received an unusually long sentence and has served at least 10 years of

6

the term of imprisonment, a change in the law, retroactive or not, is properly considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such a change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed and after full consideration of the defendants other factors for relief as well as his individualized circumstances.

The Commission clarified that Defendant's situation regarding his unusually long sentence qualifies as extraordinary and compelling and that All Changes in Law are properly considered in a motion such as Defendant's, so long as he "otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction." The Commission explains that if the Court determines that the Combination of Defendant's other factors constitute an extraordinary and compelling reason, that All Changes in Law, including non-retroactive Amendments to the Guidelines are among the broad array of factors that may properly be considered in determining the extent of any such reduction.

In addressing Defendant's other qualifying factors warranting sentence reduction, Defendant points to the Commission's retained Catch-all provision of Amendment 814 §1B1.13(b)(5).

The Commission explains that Courts do in fact have discretion to determine what constitutes as extraordinary and compelling as follows:

> Apart from the specified extraordinary and compelling reasons, the amendment retains the "Other Reasons" catchall ground currently found in Application Note 1(D). It also makes clear that extraordinary and compelling reasons exist if the defendant presents any other circumstance or combination of circumstances that, considered by themselves or together with any of the reasons specified in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4). The Commission considered but specifically rejected a requirement that "other reasons" be similar in nature and consequence to the specified reasons. Rather, they need be similar only in gravity, a requirement that inheres in the statutory requirement that they present extraordinary and compelling reasons for a sentence reduction. See 18 U.S.C. § 3582(c)(1)(A).

https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-

amendments/202305_RF.pdf [pg.'s 6-7]

Defendant will now address his other circumstances to be considered by themselves and/or together as follows:

### c) *Whether Defendant's Youth at the Time of his Crimes Qualifies as a Mitigating Factor*

The Commission Amended § 5H1.1 (Age (Policy Statement) which addresses the relevance of age in sentencing.  The amended language provides more broadly that age "may be relevant in determining whether a departure is warranted." The amendment adds language specifically providing that a downward departure may be warranted in cases in which the defendant was youthful at the time of the instant offense or any prior offenses.[4]

Defendant was only 20 years old at the time his current offense was committed. Modern research has found that the prefrontal cortex, the part of the brain that makes it possible to exercise good judgment when presented with difficult life situations, does not finish maturing until age 25. Properly considered today, this mitigating factor was impermissible decades ago, when Defendant was sentenced.

In 1997, at the youthful age of 20, it is undisputed that Defendant committed serious crimes for which considerable punishment was appropriate. However, Defendant's age at the time of the offense should now be given great weight. Age, like any other personal characteristic of the defendant, is a permissible "mitigating factor" for the court to consider when imposing a sentence that is "sufficient, but not greater than necessary" to achieve the desired goals of sentencing. See, *Gall v. United States*; 169 L. Ed 2d 445, 461-62 (2007); see also 18 U.S.C. §3553(a); USSG §1B1.10 cmt. n. 1(B)(i). As recently as 2012, the Supreme Court reaffirmed the principle that "incorrigibility is inconsistent with youth." *Miller v. Alabama*, 132 S. Ct. 2455,

---

[4] https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_2024-youthful.pdf

8

2465 (2012) (citation and quotations omitted). In other words, "[i]mmaturity at the time of the

offense is not an inconsequential consideration." *Gall*, 169 L.Ed 2d at 462; *see also*, *United*

*States v. Maumau*, No. 2:08-cr-00758-TGI 1, 2020 U.S. Dist. LEXIS 28392, at *17 (D. Utah

Feb. 18, 2020) (holding that age, change in law, and length of sentence are appropriate

considerations when deciding a First Step Act motion).

Recent neuroscience research has shown that "young adults simply do not have the

physiological capacity of adults over age 25 to exercise judgment or control impulses" because

of the continued maturation of their prefrontal cortex,[5] Or, as Judge Rakoff summarized the

research in a recent compassionate release decision reducing a life sentence to a term of 30 years

for killing two innocent bystanders (one of whom was pregnant) in a gang-related shooting, the

"prevailing neuroscientific explanation for adolescents' immaturity begins with the fact that the

frontal lobes . . . are among the last areas of the brain to mature; they may not be fully developed

until halfway through the third decade of life.".*Ramsay*, 538 F. Supp. 3d at 418 (quotation marks

and alterations omitted). "Thus, a just punishment for an adolescent is usually less severe than a

just punishment for a similarly situated adult." Id. at 423 (quotation marks omitted).

That research—which was still evolving and not yet fully absorbed by the legal

community at the time of Defendant's sentencing—is significant because Defendant was only 20

at the time of the offense. As in *Ramsay*, behavior reflects that "the regions of [the defendant's]

brain that govern impulse control, planning, and risk avoidance were underdeveloped." *United*

*States v. Sims*, No. 3:98-cr-45, 2021 WL 1603959, at *7 (E.D. Va. Apr. 23, 2021).

---

[5]James C. Howell et al., Bulletin 5: Young Offenders and an Effective Response in the Juvenile and Adult Justice
Systems: What Happens, What Should Happen, and What We Need to Know, 18 (2013),
https://www.ncjrs.gov/pdffiles1/nij/grants/242935.pdf. See also Vincent Schiraldi, Nat'l Inst. of Justice,
Community-Based Responses to Justice-Involved Young Adults, 3 (2015),
https://www.ncjrs.gov/pdffiles1/nij/248900.pdf ("Recent scientific work suggests that the human brain continues to
develop well into the 20s, particularly in the prefrontal cortex region, which regulates impulse control and
reasoning.")

It is important to note that all of these cases evaluating the importance of youth at the time of the offense were decided many years *after* Defendant was sentenced. At the time of Defendant's sentencing, youth was not a mitigating factor that the court could consider when imposing a sentence that is "sufficient, but not greater than necessary." That is no longer the case.

Similar to the defendant in *Gall*, Defendant was 20 years old at the time of his offense in 1997. His lack of maturity and an undeveloped sense of responsibility were a driving force in his then "impetuous and ill-considered actions." Id. cf. *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982) ("Youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and psychological damage"); *Gall*, at 462 ("Recent studies on the development of the human brain conclude the human brain development may not become complete until the age of twenty-five[.]")

Defendant does not suggest that his age and relative youth at the time of the offense should excuse his behavior. It does not. Defendant only asks the Court to consider his age at the time of the offense to better understand his then impetuous behavior. See, *Roper v. Simmons*, 543 U.S. 551, 570 (2005) ("[T]he signature qualities of youth are transient; as individuals mature, the impetuousness and recklessness that may dominate in younger years can subside") (citation and quotations omitted).

Defendant's immaturity at the time of the offense is a mitigating factor and his later behavior is a sign that he has matured and will not engage in the type of ill-considered conduct in the future that resulted in his convictions. See, *United States v. Salina-Cortez*, 660 F.3d 695, 698 (3d Cir. 2011) ("It is only by ensuring that the individual circumstances of the defendant are not obliterated by the offense that an individual's potential to successfully rejoin society is

maximized and the interests of the public safety advanced"). Moreover, the Supreme Court

recently held that the Constitution requires that a reviewing Court provide Defendant with "the

opportunity to show that his crimes did not reflect irreparable corruption." See, *Montgomery v.

Louisiana*, 136 S.Ct. 718, 736 (2016); see also *Cruz v. United States*, 2018 U.S. Dist. LEXIS

52924 (D. Conn. 2018) (holding that the imposition of a mandatory life sentence of an 18-year-

old convicted of murder - since *Miller* - is unconstitutional).

　　　It is also significant that Federal Courts recently championed granting compassionate

relief under the First Step Act, not for illness, but because of the defendants' "youth at the time of

the offense… their exemplary behavior and rehabilitation in prison, and their already- substantial

years of incarceration." See, *United States v. McCoy*, 981 F.3d 271, 274 (4th Cir. 2020); see also,

id at 284 (holding that district courts are "empowered...to consider any extraordinary and

compelling reason for release that a defendant might raise") (citation omitted); accord *United

States v. Sirru*, 2021 U.S. Dist. LEXIS 78840, at *13 & 17 (E.D. Va. April 23, 2021) (granting

compassionate relief to bank robber serving a life sentence who was 20 years old at the time of

the offense, and citing *McCoy* and *Miller* for the proposition that youth at the time of the offense

is a "relevant" factor, noting the "neurological development," and "decision making" ability of a

youthful defendant); *United States v. Scott*, No. 95-202-CCB, 2020 U.S. Dist. LEXIS 84313, at

*9 (D. Md. May 13, 2020) (finding defendant's age of 23 and lack of prior criminal record

favored relief); *United States v. Bryant*, 2020 U.S. Dist. LEXIS 75681, at *9-10 (D. Md. April

30, 2020) (noting relative youth-24 years old-and minimal prior criminal record, combined with

good post-sentencing conduct greatly favored relief).

　　　It is clear that Defendant is not the man he was when he entered prison more than 25

years ago. He is dedicated, respectful of the law, driven, talented, and now, hopeful. See, *Pepper*,

562 U.S. at 491 ("In assessing ... deterrence, protection of the public and rehabilitation ... there would seem to be no better evidence than a defendant's post-incarceration conduct"). In light of the factors herein, the Court should exercise its discretion and reduce Defendant's sentence accordingly.

Indeed, Defendant is no longer an immature and impulsive youth but has spent the last 25-plus years in prison becoming a man who has demonstrated deep regret, taken responsibility for his actions, and grown from his mistakes. He has demonstrated that he now possesses the capacity to contribute to society and a deep commitment to living a law-abiding life.

### d) *Whether the Harsh Nature of Time Served Qualifies as Extraordinary and Compelling*

As discussed in Defendant's prior motion for sentence reduction (DE 954, 956) he expressed how dangerous it was to be imprisoned during the COVID-19 pandemic; he expands on his argument here. See, Exhibit 2 (Defendant's Declaration).

In addressing the harsh nature of time served, reviewing Courts have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences "harsher and more punitive than would otherwise have been the case." See, *United States v. Rodriguez*, No. 00 Cr. 761-2 (JSR), 492 F. Supp. 3d 306, 2020 U.S. Dist. LEXIS 181004, 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020); see also *United States v. McRae*, No. 17 Cr. 643 (PAE), 2021 U.S. Dist. LEXIS 8777, 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) ("[A] day spent in prison under extreme lockdown and in fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions is, unavoidably, more punishing."); *United States v. Ciprian*, No. 11 Cr. 1032-74 (PAE), 2021 U.S. Dist. LEXIS 18698, at *8 (S.D.N.Y. Feb. 1, 2021) (same).

Defendant submits that a combination of circumstances unique to his case — and beyond just the harsh conditions of incarceration occasioned by the pandemic — constitute "extraordinary and compelling reasons" to warrant a reduction in his Unusually Long Sentence. Additionally, Defendant argues that this period of incarceration was more severe because he experienced "substantial fear and anxiety" of death or severe illness due to how intensely COVID spread in the BOP.

Defendant's offense was serious. But as explained above, he has been incarcerated for over 25 years. The Court could not have envisioned Defendant to have to serve a 37.5-year term of imprisonment with years spent in near-total lockdown, without access to the law library, without regular showers or access to the phone, and outdoor/recreational time, without family visitation, or the mental health and other support programs that are critical to his health and ability to reenter society.

As discussed herein, the harsh nature of time served is among the broad array of factors that Courts can consider when determining whether the combination of Defendant's other factors warrants sentence reduction when viewing his situation as a whole.

The policy goals this Court sought to vindicate in sentencing Defendant would still be achieved, and no unwarranted sentencing disparity would be created by reducing his sentence in accordance with the New Amendments and Policy Statement.

### e)  *Whether a Reduction in Criminal History Score Pursuant to Amendment 821 Part A §4A1.3 Qualifies as Extraordinary and Compelling*

Defendant committed the instant offense while on probation, resulting in the assignment of status points. However, in April 2023, the U.S. Sentencing Commission promulgated amendments to the federal sentencing guidelines as follows: "Part A of Amendment 821 limits the overall criminal history impact of "status points" (i.e. the additional criminal history points

given to defendants for the fact of having committed the instant offense while under a criminal

justice sentence, including probation, parole, supervised release, imprisonment, work release, or

escape status) under §4A1.1 (Criminal History Category)." "Part A of the amendment addresses

"Status Points," decreasing them by one point for individuals with seven or more criminal

history points and eliminating Status Points for those with six or less criminal history points."[6]

    Defendant received status points for being on probation when he was arrested for the

instant offense. As such, Defendant's criminal history score should be adjusted in accordance

with Amendment 821, Part A.

    The purpose of these targeted amendments is to balance the Commission's mission of

implementing data-driven sentencing policies with its duty to craft penalties that reflect the

statutory purposes of sentencing and to reflect "advancement in knowledge of human behavior as

it relates to the criminal justice process." See 28 U.S.C. §991(b).

    Regarding Part A, the Commission concluded that incorporating status points on a

narrower scale still aligns with the overarching goals of sentencing, while also addressing other

concerns raised regarding the impact of status points. The Commission also found that the

revisions introduced in Part A are grounded in recent research, indicating that the efficacy of

status points in predicting future recidivism, a fundamental rationale for their application, might

be less significant than initially anticipated by the original Commission.

    In August 2023, the Commission voted in favor of the retroactive application of Part A,

extending these reductions to currently incarcerated individuals with a 3-month delay in

implementation (meaning orders must have an effective date no earlier than February 1, 2024).[7]

---

[6] See, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821R.pdf
[7] See, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_821R.pdf

This ground in combination with Defendant's other factors for relief, constitute
"extraordinary and compelling" circumstances under the catch-all provision of §3582(c)(1)(A)
and Amendment 814 §1B1.13(b)(5). As such, Defendant asks this Honorable Court to grant a
sentence reduction in accordance with the Amended Guidelines.

### f)  *Whether the § 3553(a) Factors Weigh in Favor of a Sentence Reduction*

Defendant's crime was undoubtedly serious. Federal Courts, however, are instructed to
[not] give too much weight to the same factual basis that led to a defendant's conviction when
considering the reasons for granting a sentence reduction. See, *United States v. Swain*, 49 F.4th
398, 399 (4th Cir. 2022)(Although the District Court's order denying Defendant's motion under
Section 404 of the First Step Act of 2018 was procedurally reasonable, it was not substantively
so because the District Court relied on largely the same factual basis to deny Petitioner's motion
for a reduced sentence as it did to impose its initial bottom-of-the-Guidelines sentence - despite
the fact that Petitioner's amended Guidelines range decreased by five to ten years. In addition,
the court placed too little weight on the remedial aims of the First Step Act).

As in *Swain*, Defendant's criminal conduct has already been taken into account and the
focus should be on the remedial aims of the First Step Act. The act was the culmination of a
bipartisan effort to improve criminal justice outcomes, as well as to reduce the size of the federal
prison population while also creating mechanisms to maintain public safety.

In light of this, an analysis of the § 3553(a) factors in this case favors a sentence
reduction. See, 18 U.S.C. § 3582(c)(1)(A) (the Court may grant a sentence reduction only "after
considering the factors set forth in section 3553(a) to the extent that they are applicable[.]").

These factors include:

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant;

15

(2) "the need for the sentence imposed—
      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      (B) to afford adequate deterrence of criminal conduct;
      (C) to protect the public from further crimes by the defendant;
      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for [the offense] . . . [;]
(5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

      Addressing Defendant's §3553(a) factors, he points to his Individualized Needs Plan, which discusses his efforts at rehabilitation, recidivism risk level, classes completed, etc. See, Exhibit 3 (Individualized Needs Plan).

      Further supporting Defendant's readiness to reenter society, he has developed a solid release plan, supported with multiple character letters as well as letters of support. See, Exhibit 4 (Release Plan and Letters of Support).

## **CONCLUSION**

Under the New Amendments and applicable Policy Statement, Defendant has shown multiple factors for relief, including changes in law, which when viewed together, establish "extraordinary and compelling" reasons warranting a sentence reduction from his unusually long sentence. Given that Defendant has been incarcerated for over a quarter of a century for crimes he committed in his early twenties, a sentence reduction would cause no unwarranted sentencing disparities, but would prevent them.

In line with the First Step Act's remedial aims of reducing the prison population and weighing the various factors at play, this Court is urged to consider a sentence that strikes a delicate balance; both fair and just, proportionate to the offense committed, and yet no more severe than absolutely necessary under the circumstances of this case. Therefore, Defendant humbly asks this Honorable Court to grant his motion for a sentence reduction as it deems just and fair.

DATED: 11/26/2024

Respectfully submitted,

*Deandre Lewis*

Deandre Lewis, BOP No. 24956-044
FCI Pollock
Federal Correctional Institution
P.O. Box 4050
Pollock, LA 71467

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, _11 /26 /_2024, a true and correct copy of the

foregoing Motion for a Sentence Reduction was furnished by United States Postal Service, by

handing same to BOP Staff, postage prepaid to:

THOMAS E. LEGGANS-AUSA
Office of the United States Attorney
402 West Main Street
Suite 2A
Benton, Illinois 62821

Respectfully submitted,

_Deandre Lewis_
Deandre Lewis, BOP No. 24956-044
FCI Pollock
Federal Correctional Institution
P.O. Box 4050
Pollock, LA  71467

18

# EXHIBIT 2

# Defendant's Declaration

TRULINCS 24956044 - LEWIS, DEANDRE - Unit: POM-E-C

---------------------------------------------------------------------------------------------

FROM: 24956044
TO: MED Warden
SUBJECT: ***Request to Staff*** LEWIS, DEANDRE, Reg# 24956044, POM-E-C
DATE: 10/16/2024 08:22:26 AM

To: Mr. Sterns
Inmate Work Assignment: food service

Dear Warden,

I am requesting a sentence reduction based on the following:
1. I am currently serving an unusually long sentence of 450 months for a murder conviction.
2. Current available sentencing data shows that, in fiscal year 2021, nationally, the average sentence for murder was 244 months or just over 20 years.
3. If I were sentence today, my sentence would be approximately half the time I am currently serving.
4. Based on the above, I am serving an unusually long sentence. Therefore, under the USSG New Amendment 814, I qualify for a reduced sentence.
5. Due to my youthful age during the commission of my crime of conviction, my brain was not fully developed. This factor was not available at the time of my original sentencing. If I were sentence today, this factor shows that my sentence would be shorter than the 450 months I'm serving today. Therefore, I am serving an unusually long sentence.
6. Based on the harsh prison conditions since the Covid pandemic, I request a sentence reduction as deemed fair.
7. I received status points for being on probation when I was arrested for the instant offense. As such, my criminal history score should be adjusted in accordance with USSG Amendment 821, Part A.

Thank You
De'Andre Lewis
24956-044

# EXHIBIT 3

# Individualized Needs Plan



**CTCC**

CENTRAL LOUISIANA
TECHNICAL COMMUNITY
**COLLEGE**

# ASSOCIATE OF APPLIED SCIENCE IN BUSINESS OFFICE ADMINISTRATION - GENERAL OFFICE CONCENTRATION (S2.0401)

**DIVISION: Business**
**DEPARTMENT: Business Office Administration**

**Student Name:**                                    **LOLA #:**

## DEGREE
AAS - BUSINESS ADMINISTRATION (GENERAL OFFICE CONCENTRATION)

## EXIT POINTS
TD - BUSINESS OFFICE TECHNOLOGY (GENERAL OFFICE CONCENTRATION)
CTS - CUSTOMER SERVICE SPECIALIST
CTS - ADMINISTRATIVE ASSISTANT
CTC - CUSTOMER SERVICE REPRESENTATIVE
CTC - SOFTWARE APPLICATIONS

| Course No. | Course Title | Grades | Lecture | Lab | Total Credit Hours | |
|---|---|---|---|---|---|---|
| **Pre-Requisite Courses** | | | | | | |
| CPTR 1002 | Computer Literacy & Applications | | 3 | 0 | 3 | 45 |
| KYBD 1010 | Introduction to Keyboarding | | 3 | 0 | 3 | 45 |
| BUSE 0090 | Business English | | 2 | 1 | 3 | 60 |
| **CORE COURSES for all Concentration Areas** | | | | | | |
| ORNT 1000 | Freshman Seminar | | 1 | 0 | 1 | 15 |
| CSRV 1000 | Customer Service | | 3 | 0 | 3 | 45 |
| BUSM 1050 | Business Math | | 2 | 1 | 3 | 60 |
| ISYS 1440 | Word Processing | | 1 | 2 | 3 | 75 |
| BUSI 1030 | Introduction to Business | | 3 | 0 | 3 | 45 |
| BUSO 1100 | Records and Information Management | | 3 | 0 | 3 | 45 |
| **CTS – CUSTOMER SERVICE SPECIALIST** | | | | | 16 | 285 |
| ACCT 1100 | Principles of Accounting | | 2 | 1 | 3 | 75 |
| ACCT 1500 | Computerized Accounting | | 2 | 1 | 3 | 60 |
| ISYS 1540 | Advanced Word Processing | | 1 | 2 | 3 | 75 |
| BUSE 1045 | Business Communications | | 3 | 0 | 3 | 60 |
| CPTR 1320 | Spreadsheets | | 1 | 2 | 3 | 75 |
| **CTS – ADMINISTRATIVE ASSISTANT** | | | | | | 630 |
| OSYS 2530 | Office Procedures | | 2 | 1 | 3 | 75 |
| CPTR 1420 | Advanced Spreadsheets | | 1 | 2 | 3 | 75 |

| GENERAL EDUCATION COURSES | | | | | |
|---|---|---|---|---|---|
| ENGL 1010 | English Composition I | 3 | 0 | 3 | 45 |
| | Math Elective | 3 | 0 | 3 | 45 |
| | Behavioral/Social Science Elective | 3 | 0 | 3 | 45 |
| | Natural Science Elective | 3 | 0 | 3 | 45 |
| | Humanities Elective | 3 | 0 | 3 | 45 |
| AAS – BUSINESS OFFICE ADMINISTRATION - General Office Concentration | | | | 60 | 1125 |

| CTC - CUSTOMER SERVICE REPRESENTATIVE | | | | | |
|---|---|---|---|---|---|
| CPTR 1002 or (BUSI 1030) | Computer Literacy & Applications *(IBC-IC3 Certification)* or (Introduction to Business) | 3 | 0 | 3 | 45 |
| CSRV 1000 | Customer Service *(National Retail Foundation Certification)* | 3 | 0 | 3 | 45 |
| | | | | 6 | 90 |

| CTC - COMPUTER APPLICATIONS FUNDAMENTALS | | | | | |
|---|---|---|---|---|---|
| ISYS 1440 | Word Processing *(IBC-MOS Certification – Microsoft Word)* | 1 | 2 | 3 | 75 |
| CPTR 1320 | Spreadsheets *(IBC-MOS Certification – Microsoft Excel)* | 1 | 2 | 3 | 75 |
| CPTR 1310 | Database Management | 2 | 1 | 3 | 60 |
| | | | | 9 | 210 |

Fall 2020 Rev3-21

DeAndre Lewis
Lo226-1392

## BUSINESS OFFICE ADMINISTRATION
### GENERAL OFFICE – TD

**CIP 52.0401**

| PREREQUISITE COURSES | | GRADES | TERM | Credits | CLOCK HOURS |
|---|---|---|---|---|---|
| CPTR 1002 | COMPUTER LITERACY & APPS | B | | 3 | 45 |
| KYBD 1010 | INTRODUCTORY KEYBOARDING | B | | 3 | 45 |
| BUSE 1030 | BUSINESS ENGLISH | B | | 3 | 60 |
| CORE COURSES — Required for All Concentration Areas | | | | | |
| ORNT 1000 | FRESHMAN SEMINAR | A | | 1 | 15 |
| CSRV1000 | CUSTOMER SERVICE | B | | 3 | 45 |
| BUSM 1050 | BUSINESS MATH | B | | 3 | 60 |
| ISYS 1440 | WORD PROCESSING | C | | 3 | 75 |
| BUSI 1030 | INTRODUCTION TO BUSINESS | A | | 3 | 45 |
| BUSO 1100 | RECORDS AND INFORMATION MANAGEMENT | A | | 3 | 45 |
| | | | | 16 | 285 |
| CTS – CUSTOMER SERVICE SPECIALIST | | | | | |
| ACCT 1100 | PRINCIPLES OF ACCOUNTING, PART I | A | | 3 | 75 |
| ACCT 1200 | PRINCIPLES OF ACCOUNTING, PART II | B | | 3 | 60 |
| ISYS 1540 | ADVANCED WORD PROCESSING | A | | 3 | 75 |
| BUSE 1045 | BUSINESS COMMUNICATION | A | | 3 | 60 |
| CPTR 1320 | SPREADSHEETS | A | | 3 | 75 |
| CTS – ADMINISTRATIVE ASSISTANT | | | | 31 | 630 |
| OSYS 2530 | OFFICE PROCEDURES | A | | 3 | 75 |
| CPTR 1420 | ADVANCED SPREADSHEETS | B | | 3 | 75 |
| ENTP 1000 | APPROVED BUSINESS ELECTIVE | B | | 3 | 45 |
| HURM 1600 | APPROVED BUSINESS ELECTIVE | A | | 3 | 45 |
| JOBS 2450 | JOB SEEKING SKILLS | B | | 2 | 30 |
| TD – BOT General Office Concentration | | | | 45 | 900 |



| **Individualized Needs Plan - Program Review    (Inmate Copy)** | SEQUENCE: 00794204 |
|---|---|
| Dept. of Justice / Federal Bureau of Prisons | Team Date: 08-06-2024 |
| Plan is for inmate: LEWIS, DEANDRE  24956-044 | |

| Facility: | POM POLLOCK MED FCI | Proj. Rel. Date: | 07-04-2032 |
|---|---|---|---|
| Name: | LEWIS, DEANDRE | Proj. Rel. Mthd: | GOOD CONDUCT TIME |
| Register No.: | 24956-044 | DNA Status: | MAR01707 / 05-20-2011 |
| Age: | 47 | | |
| Date of Birth: | 12-28-1976 | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

### Inmate Photo ID Status

| Full status incomplete - Expiration: null |
|---|

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| POM | AM COOK | AM COOK | 04-06-2023 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| POM | ESL HAS | ENGLISH PROFICIENT | 11-24-1998 |
| POM | GED HAS | COMPLETED GED OR HS DIPLOMA | 01-25-2002 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| POM | | VT BUSINESS MANAGEMENT | 01-11-2024 | CURRENT |
| THA | C | MARC ANTONY ACE - FCI ACE | 03-01-2023 | 04-11-2023 |
| THA | C | ACE - ROMAN REPUBLIC - FCI | 02-01-2023 | 02-28-2023 |
| THA | C | CRETE - ACE - FCI | 01-03-2023 | 01-31-2023 |
| THA | C | ACE MAXIMILIEN ROBESPIERRE | 11-01-2022 | 11-30-2022 |
| THA | C | ACE TAJAN- FCI | 10-03-2022 | 10-31-2022 |
| THA | C | ACE BRIDGE TO THE 21ST CENTURY | 04-03-2022 | 04-28-2022 |
| THA | C | ACE CIVIL RIGHTS CLASS | 02-08-2022 | 02-28-2022 |
| THA | C | ACE SALADIN CLASS | 10-04-2021 | 10-29-2021 |
| THA | C | ACE MICHELANGELO BIOGRAPHY | 08-02-2021 | 08-31-2021 |
| THA | C | ACE WHAT YEAR IS IT CLASS | 07-22-2020 | 07-22-2020 |
| THA | C | ACE CLEAR SKIES CLASS | 06-15-2020 | 06-17-2020 |
| THA | C | HEALTH FAIR | 10-08-2019 | 10-10-2019 |
| TRV | C | ACTIVE TEEN PARENTING | 10-03-2017 | 11-07-2017 |
| TRV | C | INFECT. DISEASE PREVENT(HN 1) | 01-19-2017 | 01-19-2017 |
| FOM | C | ACE CDL 6-8P T | 04-11-2016 | 06-29-2016 |
| FOM | C | LABEL & MUSIC CONSTR 6-8P W | 08-05-2015 | 10-27-2015 |
| POL | C | 6 ETIQUETTE AND COMMUNCATION | 06-17-2013 | 10-18-2013 |
| POL | C | ACE NATURE ASSN | 06-17-2013 | 10-19-2013 |
| POL | C | INVESTING PRINCIPALS | 11-28-2012 | 02-24-2013 |
| POL | C | POSITIVE THINKING 2 ACE | 11-28-2012 | 02-23-2013 |
| POL | C | COUNTRIES OF THE WORLD | 11-28-2012 | 02-23-2013 |
| POL | C | 2 ACE SMALL BUSINESS CLASS | 07-23-2012 | 11-26-2012 |
| MAR GP | C | ADVANCED NUTRITION | 07-13-2011 | 09-15-2011 |
| MAR GP | C | NUTRITION CLASS | 04-13-2011 | 06-23-2011 |
| MAR GP | C | UNICOR ORIENTATION & SAFETY | 02-25-2008 | 03-10-2008 |
| MAR GP | C | UNICOR SOLDER CERTIFICATION | 02-25-2008 | 03-10-2008 |
| MAR GP | C | UNICOR SOLDER CERTIFICATION | 03-05-2008 | 03-27-2008 |
| GRE | W | GED AM ROOM 4 | 02-01-1999 | 06-20-1999 |
| GRE | C | 11WK RPP LIFSKILL MTFS 130-330 | 03-31-1999 | 06-16-1999 |
| GRE | C | ACE CLASS IN LEGAL RESEARCH | 01-14-1999 | 04-13-1999 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

*\*\* NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS \*\**



**Individualized Needs Plan - Program Review    (Inmate Copy)**

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: LEWIS, DEANDRE  24956-044

SEQUENCE: 00794204

Team Date: 08-06-2024

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 06-18-2012 |
| CARE1-MH | CARE1-MENTAL HEALTH | 06-09-2010 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| C19-T NEG | COVID-19 TEST-RESULTS NEGATIVE | 03-30-2023 |
| PAPER | LEGACY PAPER MEDICAL RECORD | 11-28-2023 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-20-2018 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-29-2017 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DRG E COMP | DRUG EDUCATION COMPLETED | 01-31-2003 |
| DRG I RQ J | DRG INTRV REQD: JUD RECOMMEND | 12-27-1998 |

## FRP Payment Plan

| Most Recent Payment Plan |
|---|

**FRP Assignment:    COMPLT    FINANC RESP-COMPLETED        Start: 06-19-2007**

Inmate Decision:  **AGREED**      **$76.07**        Frequency: **SINGLE**

Payments past 6 months:      **$0.00**          Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 4 | ASSMT | $600.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 5 | FINE | $3,000.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

**FRP Deposits**

Trust Fund Deposits - Past 6 months:  $840.00          Payments commensurate ?   N/A

New Payment Plan:    ** No data **

## Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| AWARD | EBRR INCENTIVE AWARD | 10-09-2023 |
| FTC INELIG | FTC-INELIGIBLE-REVIEWED | 12-04-2019 |
| INELIG AUT | FTC-INELIGIBLE OFF CODE - AUTO | 12-17-2019 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 07-24-2024 |
| N-ANTISO Y | NEED - ANTISOCIAL PEERS YES | 07-24-2024 |
| N-COGNTV N | NEED - COGNITIONS NO | 07-24-2024 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 04-13-2023 |
| N-EDUC N | NEED - EDUCATION NO | 07-24-2024 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 07-24-2024 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 07-24-2024 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 07-24-2024 |
| N-MEDICL N | NEED - MEDICAL NO | 07-24-2024 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 07-24-2024 |
| N-SUB AB Y | NEED - SUBSTANCE ABUSE YES | 07-24-2024 |
| N-TRAUMA Y | NEED - TRAUMA YES | 07-24-2024 |
| N-WORK Y | NEED - WORK YES | 07-24-2024 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 07-24-2024 |

## Progress since last review

| No progress since last review. |
|---|



**Individualized Needs Plan - Program Review    (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: LEWIS, DEANDRE  24956-044

SEQUENCE: 00794204
Team Date: 08-06-2024

## Next Program Review Goals

Due to your FSA needs in Finance/Poverty, enroll and complete Money Smart by next review.

## Long Term Goals

Enroll in and complete VT building Trades by 5-2026. This will address your fsa needs of Work.

## RRC/HC Placement

No.
Management decision - .
Consideration has been given for Five Factor Review (Second Chance Act):
- Facility Resources
- Offense
- Prisoner
- Court Statement
- Sentencing Commission

## Comments

407/408 reviewed

```
              *      INMATE EDUCATION DATA        *
              *          TRANSCRIPT               *  ·
```

REGISTER NO: 24956-044    NAME..: LEWIS           FUNC: DIS
FORMAT.....: TRANSCRIPT    RSP OF: POM-POLLOCK MED FCI


---------------------- EDUCATION INFORMATION ----------------------
FACL ASSIGNMENT DESCRIPTION              START DATE/TIME STOP DATE/TIME
POM  ESL HAS    ENGLISH PROFICIENT       11-24-1998 1823 CURRENT
POM  GED HAS    COMPLETED GED OR HS DIPLOMA  01-25-2002 1318 CURRENT


---------------------- EDUCATION COURSES ----------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| POM | ACT WORK KEYS | 08-15-2024 | CURRENT | | | | 30 |
| POM | VT BUSINESS MANAGEMENT | 01-11-2024 | CURRENT | | | | 900 |
| POM | ACE PERSONAL PLANNING BUDGET | 09-19-2024 | CURRENT | | | | 16 |
| POM | BOOST PHYSICAL&MENT ENERGY 6HR | 08-08-2024 | 10-12-2024 | P | C | P | 6 |
| POM | ACE PERSONAL FINANCIAL PLAN | 08-21-2024 | 09-19-2024 | P | C | P | 16 |
| POM | ACE: REAL ESTATE HOME BUYING | 06-26-2024 | 08-20-2024 | P | C | P | 16 |
| THA | MARC ANTONY ACE - FCI ACE | 03-01-2023 | 04-11-2023 | P | C | P | 6 |
| THA | ACE - ROMAN REPUBLIC - FCI | 02-01-2023 | 02-28-2023 | P | C | P | 6 |
| THA | CRETE - ACE - FCI | 01-03-2023 | 01-31-2023 | P | C | P | 6 |


G0002      MORE PAGES TO FOLLOW . . .

```
            *        INMATE EDUCATION DATA        *
            *             TRANSCRIPT              *
```

REGISTER NO: 24956-044    NAME..: LEWIS              FUNC: DIS
FORMAT.....: TRANSCRIPT   RSP OF: POM-POLLOCK MED FCI


```
------------------------- EDUCATION COURSES ---------------------------
```

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|----------|-------------|------------|-----------|------|-----|-----|-----|
| THA | ACE MAXIMILIEN ROBESPIERRE | 11-01-2022 | 11-30-2022 | P | C | P | 6 |
| THA | ACE TAJAN- FCI | 10-03-2022 | 10-31-2022 | P | C | P | 6 |
| THA | ACE BRIDGE TO THE 21ST CENTURY | 04-03-2022 | 04-28-2022 | P | C | P | 6 |
| THA | ACE CIVIL RIGHTS CLASS | 02-08-2022 | 02-28-2022 | P | C | P | 6 |
| THA | ACE SALADIN CLASS | 10-04-2021 | 10-29-2021 | P | C | P | 6 |
| THA | ACE MICHELANGELO BIOGRAPHY | 08-02-2021 | 08-31-2021 | P | C | P | 6 |
| THA | ACE WHAT YEAR IS IT CLASS | 07-22-2020 | 07-22-2020 | P | C | P | 2 |
| THA | ACE CLEAR SKIES CLASS | 06-15-2020 | 06-17-2020 | P | C | P | 2 |
| THA | HEALTH FAIR | 10-08-2019 | 10-10-2019 | P | C | P | 1 |
| TRV | ACTIVE TEEN PARENTING | 10-03-2017 | 11-07-2017 | P | C | P | 16 |
| TRV | INFECT. DISEASE PREVENT(HN 1) | 01-19-2017 | 01-19-2017 | P | C | P | 1 |
| FOM | ACE CDL 6-8P T | 04-11-2016 | 06-29-2016 | P | C | P | 20 |
| FOM | LABEL & MUSIC CONSTR 6-8P W | 08-05-2015 | 10-27-2015 | P | C | P | 20 |
| POL | 6 ETIQUETTE AND COMMUNCATION | 06-17-2013 | 10-18-2013 | P | C | P | 12 |


G0002       MORE PAGES TO FOLLOW . . .

```
         *        INMATE EDUCATION DATA        *
         *           TRANSCRIPT                *


REGISTER NO.: 24956-044    NAME..: LEWIS              FUNC: DIS
FORMAT.....: TRANSCRIPT    RSP OF: POM-POLLOCK MED FCI
```

---------------------------- EDUCATION COURSES ----------------------------

| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|----------|-------------|------------|-----------|------|----|----|-----|
| POL | ACE NATURE ASSN | 06-17-2013 | 10-19-2013 | P | C | P | 10 |
| POL | INVESTING PRINCIPALS | 11-28-2012 | 02-24-2013 | P | C | P | 12 |
| POL | POSITIVE THINKING 2 ACE | 11-28-2012 | 02-23-2013 | P | C | P | 6 |
| POL | COUNTRIES OF THE WORLD | 11-28-2012 | 02-23-2013 | P | C | P | 12 |
| POL | 2 ACE SMALL BUSINESS CLASS | 07-23-2012 | 11-26-2012 | P | C | P | 10 |
| MAR GP | ADVANCED NUTRITION | 07-13-2011 | 09-15-2011 | P | C | P | 2 |
| MAR GP | NUTRITION CLASS | 04-13-2011 | 06-23-2011 | P | C | P | 20 |
| MAR GP | UNICOR ORIENTATION & SAFETY | 02-25-2008 | 03-10-2008 | P | C | P | 15 |
| MAR GP | UNICOR SOLDER CERTIFICATION | 02-25-2008 | 03-10-2008 | P | C | P | 30 |
| MAR GP | UNICOR SOLDER CERTIFICATION | 03-05-2008 | 03-27-2008 | P | C | P | 20 |
| GRE | GED AM ROOM 4 | 02-01-1999 | 06-20-1999 | P | W | I | 242 |
| GRE | 11WK RPP LIFSKILL MTFS 130-330 | 03-31-1999 | 06-16-1999 | P | C | P | 15 |
| GRE | ACE CLASS IN LEGAL RESEARCH | 01-14-1999 | 04-13-1999 | P | C | P | 18 |

G0002        MORE PAGES TO FOLLOW . . .

```
              *          INMATE EDUCATION DATA              *        .
    F 004 *                    TRANSCRIPT                   *
        -
```

REGISTER NO: `24956-044`     NAME..: LEWIS                    FUNC: `DIS`
FORMAT.....: `TRANSCRIPT`    RSP OF: POM-POLLOCK MED FCI


--------------------------- HIGH TEST SCORES ----------------------------

| TEST | SUBTEST | SCORE | TEST DATE | TEST FACL | FORM | STATE |
|------|---------|-------|-----------|-----------|------|-------|
| ABLE | LANGUAGE | 8.7 | 05-26-1999 | GRE | | |
| | NUMBER OPR | 8.0 | 05-26-1999 | GRE | | |
| | PROB SOLV | 8.3 | 03-04-1999 | GRE | | |
| | READ COMP | 13.0 | 03-04-1999 | GRE | | |
| | SPELLING | 3.9 | 12-10-1998 | GRE | | |
| | VOCABULARY | 4.7 | 12-10-1998 | GRE | | |
| GED | STATE HIST | 33.0 | 05-11-1999 | GRE | PASS | IL |


G0005       TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED



**WorkKeys** *Skill Report*

A8530400-964837-11

## WorkKeys Individual Summary Score Report

| | | |
|---|---|---|
| Examinee: | LEWIS, DEANDRE | Examinee ID**: 6044 |
| Realm: | FEDERAL CORRECTIONAL INSTITUTION POLLOCK | Report Date: Sep 13, 2024 |
| Test Site Name: | FEDERAL CORRECTIONAL INSTITUTION POLLOCK | |

| Manifest Name | Test Date | Level Score | Possible Range | Scale Score | Possible Range |
|---|---|---|---|---|---|
| WorkKeys Applied Math | 8/1/2024 | 3 | <3 - 7 | 74 | 65 - 90 |
| WorkKeys Graphic Literacy | 8/1/2024 | 3 | <3 - 7 | 73 | 65 - 90 |
| WorkKeys Workplace Documents | 8/1/2024 | 4 | <3 - 7 | 80 | 65 - 90 |

## WHAT YOUR SCORES MEAN

### WorkKeys Applied Math:
You scored at Level 3. People who score at Level 3 have demonstrated the skills to translate word problems into mathematical expressions to:

- Solve problems that require one type of mathematical operation. They add or subtract either positive or negative numbers (such as 10 or -2). They multiply or divide using only positive numbers (such as 10).
- Convert a familiar fraction (such as ½ or ¼ to a decimal) and convert from a decimal to a common fraction; OR convert between decimals to percentages (such as 0.75 to 75%).
- Convert between familiar units of money and time (such as one hour equals 60 minutes or ½ of a dollar equals $0.50).
- Add the prices of several products together to find the total, and calculate the correct change for a customer.

### WorkKeys Graphic Literacy:
You scored at Level 3. People who score at Level 3, using graphics designed at the basic and low-moderate levels, have demonstrated the following skills:

- Locate and find information
- Identify the next step in a process

### WorkKeys Workplace Documents:
You scored at Level 4. People who score at Level 4 have demonstrated all of the Level 3 skills. They also have the skill to read and comprehend workplace documents written in straightforward sentences that use familiar vocabulary, conditionals, and a few advanced words. In reading these documents, they are able to:

- Identify the main idea
- Identify specific details
- Use the information in the document to figure out the meanings of words or phrases that are not defined for them
- Choose when to perform a step in a series of steps
- Apply information/instructions to a situation that is the same as the situation described in the document
- Choose what to do when changing conditions call for a different action

© 2024 ACT, Inc. All rights reserved.                              **ID field is abbreviated to last four digits



# ACTIVE PARENTING OF TEENS ☺ THIRD EDITION

*I HAVE LEARNED HOW TO HELP MY TEEN-AGE CHILDREN DEVELOP THE PRINCIPLES OF COOPERATION, COURAGE, RESPONSIBILITY, RESPECT, AND SELF-ESTEEM SO THAT THEY MAY SURVIVE AND THRIVE IN THE SOCIETY IN WHICH THEY LIVE.*

## Deandre Lewis

### HAS SUCCESSFULLY COMPLETED THE

Active Parenting of Teens program

NOVEMBER 7,
2017

*S. Doss,* _____, *Parenting Coordinator*
**SIGNED,** *Signatory Name,* Signatory Title

*C. Lockey,* _____ *Supervisor of Education*
**SIGNED,** *Signatory Name,* Signatory Title







*rtificate of Achieveme*

Presented to

**Deandre Lewis**

For successfully completing

# Anger Management Course

*ger Management is a cognitive-behavioral curriculum designed to teach individuals the too*
*manage and react more constructively to strong emotions.*

C. Montgomery, M.S, Advance Care Treatment Specialist

December 14, 2023
FCC Pollock



Certificate of Achievement

Presented to

**Deandre Lewis**

For successfully completing

**Basic Cognitive Skills Course**

*The Basic Cognitive Skills class teaches the application of cognitive skills that enables participants to challenge their perception and thinking to effectively manage their emotions and behaviors.*

C. Montgomery, M.S, Advance Care Treatment Specialist

March 5, 2024
FCC Pollock

# rtificate of Achieveme

Presented to

## *Deandre Lewis*

For successfully completing

## **Traumatic Stress & Resilience**

*Trauma Education is a workshop to provide information about understanding traumatic experiences, the impact of traumatic experiences, building resilience, and resolving difficulti through treatment.*



**C. Montgomery, M.S, Advance Care Treatment Specialist**

**September 26, 2024**
**FCC Pollock**

# Acknowledgment of Participation in the Turning Points Protocol, a self-guided study in the SHU.

## OFFERED BY FCC-TERRE HAUTE, PSYCHOLOGY SERVICES

## Deandre Lewis #24956-044

### oping Series

1. Stress Management
2. Healthy Sleep Habits
3. Coping with Time
4. Rational Self-Counseling
5. Choosing Positive Attitudes
6. Accepting Help
7. Building a Routine

Date: November 23, 2022

# U.S.P. TERRE HAUTE

# *Certificate of Completion*

## LEWIS, DEANDRE

## #24956-044

## DRUG ABUSE EDUCATION PROGRAM

(30 Hours)

January 24, 2003



G. H. Biglestone, M.S.
Drug Treatment Specialist



C. A. Bigler, Ph.D.
Drug Abuse Program Psychologist

# EXHIBIT 4

# Release Plan and Letters of Support

TRULINCS 24956044 - LEWIS, DEANDRE - Unit: POM-E-C

--------------------------------------------------------------------------------

FROM: 24956044
TO:
SUBJECT: Letter to Judge
DATE: 05/31/2024 08:32:56 AM

Dear Honorable Judge Rosenstengel.

Hi. my name is De'Andre Lewis and i am writing this court asking for compassionate release in the above case that i took part in some 26 years ago. At the time I was just a young man of 20 years agreasily to have been influence by per pressure from my employer, on drugs ,no father figure to look up to and a young father of five my self.

Your Honor, if there were any such thing as having a wish my only one would be not getting warped up in something as horrible in the begin with. Taking Mrs... Ablen away from her family hurts me to this day and may be for the rest of my life. "deservingly so". This one wish of mine i can not being to fruition which hurts, but through the pain and hurt i deal with i find to endure. I realize not all is lost. doing my time a question continuously ask my self, that is until i found the answer was? What good can i come up with from this bad decision i created. answer give back. Play my part in rearing potentially the youth from falling by the waste side and not possibly destroying not just there life but more so others, this is my life journey.

Helping the youth to dream bigger than their predicament , aspire higher then there circumstance and imagine bolder then there surrounding is everything to me. This Your Honor i can make possible. Recognizing the severity from my pass action i have committed myself to a life of change. I am not that once lost stupid insecure person of yester year. Since 2010 i have been on a mission with determination in trying to chance my mass into a massage of influential influence. At Marion II by way of the chapel i started a program called "Stand Down". It is a comprehensive program geared towards assisting individuals in staying out of trouble in the begin with. Assist them by helping them obtain there G.E.Ds while bettering them selves through education. Even finding a sense of a spiritual foundation all a while preparing for society. This program is still active here at F.C.I. Pollock La.

2018 i have also been involved with a youth group in ST. Louis Mo. by way of a child hood friend Michelle Franklin through her A.M.E. church. My duty draw up programs for age's 10-21. In todays world i feel parents adults to elders responsibility is talking to our youth and not at them. It will allow us in sowing them their beauty amongst the dense fog from per pressure misery and self hate. I enjoy every task I'm assign. At this very moment i also attend CLTCC for business management. Central Louisiana Technical Community College. I am also a license solder tech. These are just a few of my many accomplishments i have achieve since my incarceration. If given the opportunity of an early release i do not just assure you i guarantee stepping back inside prison jail or any run-in with the LAW is a not, that's with the many challenges i have ahead of me.

Your Honor, i know my mission more reason why i will not let this court down myself or family. i plan on relocating to Houston Texas, with my eldest son La'Kel Bass who a graduated from U.T.S.A obtain my C.D.Ls license lots of volunteer work through local charity and help raise my grand children's. Most importantly work work & work. Having the right mental attitude have given me the ability to change my circumstance. This is what prison has done for me. extend a life line towards salvation which i am still climbing up. The remorse i feel from my action is a understatement and i am more than sorry for the pain hurt and miss that i cause the Ablen family. I pray that they fund forgiveness from action. The pain i cause my own family i pray they also find forgiveness. Being the youngest our of five know or seen me being able to phantom such those action, even coming from a troubling house hold. Three broken arm's, i was hit by a car and shot twice all before my 17th birthday. They were shooked by what happen ,but also see my transformation. I ask Your Honor now mature with a single pointed focusses and a will in making amends from my pass i ask that you look at me now and not 26 plus years age 20 now 48. I thank you Your Honor from time in this matter.

Sincerely
De'Andre Lewis #24956-044

Wanda J. Lewis
7218 Burrwood Drive Apt. A
St. Louis, MO 63121

January 14, 2024

The Honorable NANCY J. Rosenstengel
United States District Judge

Honorable Judge Rosenstengel

I am writing this letter on behalf of De'Andre Lewis who is my youngest son. I understand that he is eligible for a sentence reduction. I wanted to share my thoughts with you about him.

When De'Andre was arrested and put in prison he was a lost child trying to fit in or find his place among very dangerous peers. I am genuinely sorry for what he did and I know he is full of remorse also. When I have talked to him over the years since he has been in prison, he has expressed a strong desire to repent for his actions and seek forgiveness.

In my conversations and visits with him since he has been locked up, he is different from the person who was sentenced so many years ago. He talks about responsible things and is conscientious about his goals – to educate himself and to try to find ways to help others.

As a family, we have tried to support him with calls, emails and visits. He is a caring and dedicated son, brother, and father to his children as best he can be under the circumstances. Through my regular contacts with him I sincerely believe in my heart that he has absolutely changed, grown, and matured over these 20-plus years. I also think he has a lot to offer young people in our community who are dealing with the same pressures and difficulties that he faced as a teen. I think he has much to say to them and can share ideas that might help them find a positive path to adulthood. He wants to try to prevent other young people from doing the wrongs that he did. Given the fact that he was diagnosed at an early age with ADD and placed on Ritalin. I often wonder if this along with the fact that his father's lack of active engagement and involvement in his life had an adverse effect on his mentation and ability to use discernment and make healthy decision-making capabilities.

I know that when he is released at some point in the near future, he will face challenges. However, I have great confidence that he has developed the critical thinking skills and a level of maturity that he needs to avoid getting into trouble ever again. He also has his children, his family, me and my extended family to keep him balanced, encouraged, and on the right track.

I hope you grant him a sentence reduction that will bring him back to us sooner. I look forward to a positive outcome in this very important matter.

Respectfully
Wanda Lewis

Queonna L. Jackson
24 Hill Ridge Court
St. Charles, MO
January 7, 2024

The Honorable *Nancy J. Rosenstengel*
United States District Judge

Honorable Judge *Rosenstengel*
I understand that my youngest brother De'Andre may receive a sentence
reduction and I would like for you to please consider my heartfelt thoughts in
support of allowing him to come home a bit sooner.
Unfortunately, growing up, De'Andre did not have the best examples to look up
to, a strong role model or a healthy father figure when he was young. Of course,
he knew right from wrong, but young people sometimes emulate what they "see"
instead of what they "know" to do.

I watched my brother grow up in a prison environment over the last 22 years.
I can truly say that the experience has changed him (perhaps even saved his life).
I know that today he is a better man than he was when you sentenced him.
Despite everything, he has not hardened his heart or become bitter. He has done
his very best to keep in touch with his children, trying to provide them advice,
wisdom, and guidance so they do not make the same mistakes he made in life. He
tries to help them resolve conflicts. When I speak with him now, he is thoughtful
and shows greater judgment and decision-making than ever before.

De'Andre accepts responsibility for what he did, he is incredibly remorseful, and
wants to do whatever he can to make reparations. His punishment was fair and
reasonable considering the seriousness of his crimes and who he was when he
was sentenced. However, since then he has done everything he can to change and
has become a better person. He has served a substantial amount of time and I
hope you can see that he has earned a small measure of mercy. Taking all these
things into consideration, please grant him a sentence reduction.

Thank you.
Respectfully,
Queonna L. Jackson

Tiara Cooper
St. Louis, MO
January 14, 2024
The Honorable NANCY J. Rosenstengel
United States District Judge


Honorable Judge Rosenstengel
My name is Tiara Cooper and I am writing on behalf of De'Andre Lewis. I have
known him my whole life since he is my uncle. I remember De'Andre as being
dependable, responsible and caring. At least those were the characteristics he
displayed when picking me up from school when I was kid. He would get me
lunch and help with homework; I was more like his own child then a niece. As I
grew older, I viewed my uncle as a friend or brother because he was my youngest
uncle. I saw him play around with his friends, brothers and cousins doing
mindless teenage boy things. He left the outside world over 20 years ago as a
young, immature teenage boy and he has grown into a man.


When I was younger and visited De'Andre in prison, I couldn't understand why a
person who I loved so much could never come home with us when we would
leave. When I finally reached an age to understand what was going on, my uncle
and I developed an even closer relationship. I was able to look beyond the "when
you are you coming home?" questions and I started to ask him about his
experience and what it is like. Though there are many distractions in prison,
De'Andre has used his time wisely and productively. He earned his GED and
completed other educational courses to help expand his knowledge. He studied
religions and read many books about becoming a better person and has grown
closer to his higher power of choice.
Even the authorities in prison noticed the change in him and gave him
responsibilities. At one facility he held a supervisory position over other inmates,
overseeing the cleaning operations in his unit. That showed me that other men
respected him as a leader. De'Andre has also mentored younger inmates and
helped them to stay focused and positive to help the time pass faster.


I feel that my uncle deserves a second chance at life. He has sought forgiveness as
much as he could from prison. De'Andre is not the same person he was when he
walked into prison and he should not be viewed through the same lens that he
was viewed through when he was punished for his terrible crimes. De'Andre is
needed by his children, grandchildren, nephews, and cousins. They need him to

speak life into them and guide them on the right path so that they do not make the same mistakes he made. He is a living example. There is no other man that can speak his story, and it is not a fairytale – it is real.

Thank you for your time and consideration by reading this letter.
Respectfully,
Tiara Cooper

Tephanie N. Jackson
August 13, 2020
Cat Walk and Da.Connect
10436 West Florissant Avenue
St. Louis, Mo. 63136

To whom it may concern,
I am writing this letter to express my support for the early release of DeAndre' L. Lewis inmate number # 24956044. My name is Tephanie Jackson and I have known DeAndre' my entire life, we are first cousins. I would like to inform the courts that I understand DeAndre has petitioned for an early dismissal from prison due to him being classified as a "high risk exposure" individual related to the unfortunate global Pandemic the world is currently burdened by because of COVID-19. I am in full agreement of his petition for early release as he has a solid support system and I am part of that support system.

DeAndre' acknowledges his mistakes and he is remorseful for his past crimes, he has served more than fifty percent of his sentence, and from what I understand he has completed several programs/certifications, his high GED, is currently employed and has good behavior.

DeAndre' has a job lined up upon his release, he has a secured home, supportive family and friends. Twenty plus years in prison has changed and matured him and he utilized his incarcerated time to improve himself and will be a positive and productive citizen once released. He has had many years to reflect on his past mistakes and is remorseful for his past actions.

If you would please allow for an early release for DeAndre' I will do my part by way of committing to assist him in extending an employment opportunity. I am the Owner/CEO of Cat Walk Fashions and Da Cat Walk Connect Women's and Men's Boutique and Accessories located at 10436 West Florissant Ave. St. Louis, Mo. 63136: 702-833-0129

I'm grateful in the fact that his family unit has the opportunity to be finally restored allowing him to work and provide financial support to his immediate family members, to be actively engaged and physically present to support and interact with his family.

Thank you in advance for your time, attention, efforts and careful objective and unbiased consideration of this very serious request.
Respectfully,
Tephanie Jackson

Dear Your Honor.

      Hi. my name is Neteshia Bass Scott. I pray that your family and self or safe in todays world. My self being a woman of faith hope you do not mind my statement. Any how i write to you in this matter hoping for some relief in the above case. De'Andre is my children's father. We were so.. young when we first met, head over hill for each other. Your Honor De'Andre is a sweet person who got caught up with the wrong crowd, and who i feel been taking advantage of in his mis-direction. He wanted so much to do what was right only falling short.

      I have never seen him angry making that whole situation he got him self wrapped up in so crazy to me my family his own and others. I know he had to have been influence taking part in such a horrible crime. The influence of his decision has been life altering for our children's my self and I'm sure the Ablen family. I pray that they are recovering from such a tragic event. To this day De'Andre still fought him self for not having the strength with-in himself not taking apart in this bad crime . He also fights hard now in trying to prevent others from making a mis-take just as he. That started with our children's since the time of his incarceration. He have been monumental from prison helping raise our children. The things he have done for our children's while they were young was a big help. From sending money from his Unicor job, helping with there school work or conference calls at school, he was there. My children love there father for not giving up on them that's with going through his own difficulties doing time. Only God knows how my life would have turned out with out his assistance.

      I know he is a man of regret, remorse and hurt. which is why i ask will you Your Honor look at him for who he is now oppose to some 26 years ago which lead him in this situation. Even through I am a happy married woman i still consider De'Andre my best friend. And I am willing to assist him upon his release when ever that is. Your Honor there is a lot De'Andre have to offer in society from who he is now what he believes in and stands for as a mature individual. I am in support of a sentence reduction. I pray that you just may grant him a second chance towards his freedom and allow us to repair his family

      Sincerely
      Neteshia Bass Scott
      314-561-0578

Dear Your Honor,

      I hope this letter finds you well.
    I am writing on the behalf of my father De'Andre Lewis who case is currently in front of you. I do understand the complexities of the legal system and the importance ensuring justice. However I would like to present some information that I believe warrants reconsideration towards my father sentence.

      Your Honor, my dad is a good man of sound character not the 20 year old blind lost person he once was. My brother sister and I know him for his love guidance compassion as well being a dedication through us for as teaching others from not being or ending up where he is at. Me being the oldest of my siblings know the pain his situation cause him from his action because for the last 26 some years he has been incarcerated he talks of nothing but making what ever amends he has to in correcting his wrong.

      His father ship has kept not just myself out of trouble alone with guiding me through college U.T.S.A. high honors and thriving in a promising career. He have been there for my brother and little sister as well, that's since he's been incarcerated. when he left us we were only three, two and one years of age but his presence of letter, visits and phone calls help navigate us to become God fearing model law-abiding productive citizens. His commitment to personal growth and positive change is evident through raising us from prison. If given a second change we have made plans for him to move with me to Houston Texas where I've been living since 2014.

      I am willing to help my dad in what ever positive endeavor he is willing to pursues. He wants trucking and giving back to the youth. I believe his release under appropriate conditions would not only benefit him but also contribute to the over all well being of our community. I understand the gravity of your decision and the responsibility that comes with your position, I also trust in your wisdom and impartiality as you evaluate this request.

      Thank you Your Honor for your time and consideration. I am hopeful that with your guidance my father will be given an opportunity to rebuild his new life.

     Sincerely

     La'Kei Bass # to be reach 314-479-9555

Dear Honor,

        Hi, my name is Dashyne Bass and I am the daughter of De'andre Lewis .
I write this letter in sharing who my father is to me and that's from the time he has been incarcerted. I was only one years of age when my dad committed such a horrible act which lead him in this position in the begin with. For many years i had know understanding where my dad was or why he was not coming home to me and my brother's until many years later. Growing up was hard not having him around but through his constant letters, visit's and phone calls his presence helped out tremendously.

        I have to say Your Honor now being 27 years of age not many children can say with out there fathers physical presence that they have turn out as I have. He has been hands on from the time of his arrest even up till now. He still has records of some report cards when I was a kid plus letters. I know that his crime was a bad crime know matter the age but I also know that my dad is a change man now and not the little boy lost and blind he once was. He speaks of only his dreams an asperation in helping many youth as he can in not making the same or any mistake as he once did.

        Your Honor in know way is this letter to excuse my dad from what he have done up under others influence. It is only to paint a picture of who he has become and after some 26 years later you just may grant him a second chance at life. I am willing to assist my father when ever you choose to let him out i alone with my two brothers who also relocated to Texas are waiting for his arrival.

        I thank you dearly just listening
        Sincerely
        Dashyne Bass

**Dear Judge**

I hope this letter finds you well and in good health. I am writing to appeal for an early release of my father De'Andre Lewis who is currently serving time at F.C.I. Pollock. I do understand the gravity of his situation therefore I am reaching out with a sincere plea for relief in this case.

My father is not just a name on paper he is a good person with a huge heart. his past 26 some years ago should not define his entire character. To shed light on the positive changes my dad has undergone from the blindness of his past I pray that you will find remarkable. Such as first acknowledging the mistake that took him away from the Abien family and his own. I do not think that my father have put what happen behind him, for the simply fact he's always talking about what if he had never met Westmoreland and others.

Even to where he talks extensively in writing the wrong he cause by doing what he can in helping any one from committing such a unconscious act in there youth or life. His regret go deep on a path of redemption and person growth. I must say his absence have left a void in our family that is immeasurable. At the same time his presence of letters phone call's and occasionally visits my brothers ,sister and I manage to with stand our hard day and times. He never let up on us from being raised by a single mother. He helped out with home work, school calls school projects heck our entire up bring. I can say none of his children's experience jail or prison all because of our dad. If given the early chance I am sure what he have installed within us he will also others. Your Honor my dad has a lot to contribute now toward society. Look at him for who he is now and not over 26 years ago. Compassion is all I am asking for in his situation.

I thank you for your valuable time in this matter as well as understanding.

Sincerely
Derrick Bass # to be reach 214-773-8239

FROM: Franklin, Michelle
TO: 24956044
SUBJECT: Letter 3
DATE: 05/20/2024 01:06:06 PM

This letter is written by me, Michelle Franklin on behalf of DeAndre Lewis. I have known DeAndre personally for well over 25 years, having first met growing up in the same community.

DeAndre has always been a good person who is hardworking, trustworthy, family oriented, kind and loving. He has helped me on several occasions since his incarceration with ideas and sound advice for the youth ministry I lead at my church in ways to keep them from making senseless mistakes and different ways of focusing their time on more positive lifestyles.

I feel that DeAndre is a mature man's and is working on his education. He is a follower of the Moorish faith and holds strongly to the principles of love, peace, self-respect and citizenship. DeAndre has shown great remorse and I believe he deserves a second chance at life. Over the years, I have watched DeAndre grow and develop into a wise and humble man that I am still proud to call my friend. He has a loving family and a support system that believes in him. I know once released he will be successful in whatever he puts his mind to.

I humbly ask that you to allow his sentence to be reduced.

If you have any further questions, please feel free to contact me on 314-744-1714

Sincerely,


Michelle Franklin
2480 Woodsage Drive
Florissant MO
63033

-----------------------------------------------------

FROM: Franklin, Michelle
TO: 24956044
SUBJECT: Letter 1
DATE: 05/20/2024 12:36:10 PM

To Whom It May Concern,

My name is Brandon Alexander and I am 21 years old. I am writing in support of Mr. DeAndre Lewis. I have had the pleasure of knowing DeAndre for several years now, and during this time, I have witnessed his unwavering dedication to helping and supporting young people. He has mentored me through various situations that has prevented me from being dead or in jail.

Mr. Lewis possesses a unique set of strengths, skills, and achievements that make him an exceptional mentor. He is a very supportive individual who goes above and beyond to listen to the struggles and concerns of not only me but other the youth that I know. He is patient, empathetic, and always willing to offer guidance and encouragement. His letters and phone conversations has meant a lot to me. He truly cares about my personal and academic growth and is committed to helping me reach my full potential. His passion for mentoring shines through in everything he does, and it is evident that he has made a positive impact on the lives of those he mentors.

I have no doubt that he will continue to inspire and uplift those around him with his positive attitude and genuine concern once he is able to re-enter society.

If you have any further questions or require more information, please do not hesitate to contact me.

Sincerely,
Brandon Alexander
mcypd12345@gmail.com

FROM: Franklin, Michelle
TO: 24956044
SUBJECT: Letter 2
DATE: 05/20/2024 12:36:10 PM

My name is Carlinda McDaniels and I am writing to provide a character reference for Mr. DeAndre Lewis, whom I have known for 30 plus years. He is like a son to me. During that time I have known him to be honest, responsible and always open to assisting others.. He has a strong moral compass, and I have no doubt that he will be a productive and law-abiding member of society and worthy of being sent home early. I strongly recommend leniency toward his sentence and I am confident that he will not fail to uphold the highest standards of conduct in the future.

Sincerely, Carlinda McDaniels
Msmcdaniels2012@yahoo.com

November 3rd, 2024

Dear Your Honor,

I am writing to respectfully request that you consider granting my nephew, Mr. Deandre Lewis, an opportunity for release from prison. My name is Ms. Vickie Jackson, and I am the sister of his mother, Ms. Wanda Lewis. I have known Deandre all his life, and I believe that he has served his time and has learned valuable lessons from his experiences and the mistakes he made in the past.

Before this incident, Deandre was a dedicated son, brother, uncle, and father. He was a hard worker who contributed to his family and spent much of his time caring for those he loved. He brought a positive presence to our family, one that we deeply miss.

During his time in prison, Deandre has expressed genuine remorse and regret. Through reflection, he has gained a stronger sense of responsibility, and he has dedicated himself to becoming a better person. He is determined to build a productive life for himself and is committed to serving as a role model for his children, as well as contributing positively to our community.

Your Honor, I humbly ask you to consider giving Deandre a second chance. I am confident that he is ready to become a positive and contributing member of society. Our family stands ready to provide him with the support and guidance he needs to rebuild his life, and we look forward to helping him integrate successfully back into the community.

Please know that our thoughts and prayers are with everyone involved, especially the family of the loved one lost. We offer our heartfelt condolences and continue to pray for healing for all those affected.
Thank you for your time, consideration, and understanding.

Sincerely,
Ms. Vickie Jackson

November 3, 2024

Dear Your Honor,

My name is Deborah Jackson, and I am the aunt of Deandre Lewis. His mother is my sister, and I have known Deandre his entire life. Although he made some poor decisions as a young person, I have seen how he has reflected on his choices and grown from his experiences. I genuinely believe that Deandre has learned valuable lessons from this hardship and is prepared to make positive changes in his life.

Deandre was never a troublesome child; he was, and still is, deeply loved by his family. Growing up, he was kind-hearted, respectful, and always willing to help others. I used to watch him when his mother worked, and I never had any issues with him he was thoughtful and well-behaved. His mistakes do not define who he is, and I am confident that with guidance and support, he will be able to turn his life around.

I am respectfully asking, Your Honor, to consider granting Deandre the opportunity for a second chance. I truly believe he has the potential to become a positive influence and a contributing member of our community. His family and I are committed to supporting him through this next phase of his life and ensuring he has the resources he needs to succeed.

Thank you for taking the time to consider my request. I understand the seriousness of this matter and trust in your wisdom. May God bless you in your decision, and may you find it in your heart to offer Deandre a chance at redemption.

Sincerely,
Deborah Jackson

5/20/2024

Your Honor,

My name is Shane Faithful, I am writing this letter for a character reference for one Mr. DeAndre Lewis and I did not hesitate at the chance to do so. Back in 2018-19, when my co-defendant and I were and still are wrongfully incarcerated, and I was at my lowest, in fact the lowest I had ever been in my life. Mr. Lewis without so much as a pause picked me up and dusted me off, invited me into his small circle and showed me a way forward. He had forged and put together a group of liked minded men who stood on principle, education, honor, respect & godliness. All things that I respect and believe in.

In doing so it lifted a great weight off my shoulders, I suspect the only kind of weight that comes with a prison sentence that straps you with an ungodly and awful amount of time. For the six plus years that I've known Mr. Lewis, I have known him to be a dedicated father. His children were very young when he got incarcerated 4,3,2 and 1, but still managed to not only stay in touch, but build everlasting life long bonds that help children become productive and successful members of society. Family means a great deal to him, and even at times when we do not speak directly about it, you can tell he severely and sincerely regrets the mistakes that put him here and took him away from his family. He has been a very loyal, upstanding, and forthright friend. He always exhumes a very positive image and attitude, in what can only be described as a very negative environment. He has been a great role model for a lot of guys here. I have known and met several inmates that have been guided away from bad habits and a criminal mindset through Mr. Lewis counsel. If I want to find Mr. Lewis like many others, I know where to look. The library or the chapel. He is always in one or the other. I hope and pray that Your Honor gives him relief.

Sincerely,

Shane Faithful

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 4:98CR56 RWS |
| | ) |
| DEANDRE LEWIS, | ) |
| Defendant. | ) |

## REPLY TO UNITED STATES' RESPONSE TO FIRST STEP ACT MOTION

The parties and the United States Probation Office agree that Deandre Lewis is eligible for a sentence reduction in this case under the First Step Act of 2018. *See* Doc. Doc. # 73 at 1 & # 71 at 3.

Robert G. Roloff, the Chaplain at FCI Terre Haute, who worked with Mr. Lewis from 2007 – 2012 at USP Marion, and recently re-connected with him at FCI Terre Haute, was interviewed by counsel from the Federal Defender's Office on April 15, 2019.[1]  Chaplain Roloff has been with the Bureau of Prisons for 16 years.  He has experience at many institutions from minimum security Camps to Death Row.  The Chaplain describes DeAndre Lewis as a "model inmate."  In their weekly (sometimes daily) contacts, both at Marion and now at Terre Haute, the Chaplain reports that Mr. Lewis is "respectful, considerate, reasonable, and appreciative."  He says that Mr. Lewis is one of the best inmates he has ever worked with.  Robert Roloff provided an example of Mr. Lewis' conduct and decision-making that reflects the positive personal change he has achieved since his sentencing in 1998:

> In many Federal Prisons, members of a religious community will appoint a leader for prayer services and to advocate for, and offer guidance to, those who participate in the particular group.  This person is also responsible for making requests for supplies, asking for accommodations, and applying for religious holiday adjustments. When Mr. Lewis was at USP Marion, he held such a position with a group that practices the Islamic faith. According to the Chaplain, Mr. Lewis was trusted by the group and they followed his

---

[1] Chaplain Roloff asked counsel to inform the Court and the United States that he can be reached at 812-244-4400.

example and advice which in turn helped the Chaplain to communicate with the group in a manner that was honest but also sensitive to their religious practices and beliefs.

Before the Bureau of Prisons developed a consistent policy regarding Ramadan rituals, Mr. Lewis approached Chaplain Roloff on behalf of his group, asking for the right participate in the prayers, fasting, and post-sundown food requirements for the season. The request was denied by prison officials. The Chaplain was concerned because at many prisons during that time, such a denial raised very complex issues and could be a source of volatility. For those who practice the Islamic faith, Ramadan is as important a religious event as Lent and Holy Week is for many Christians. Chaplain Roloff expressed admiration for the way that Mr. Lewis handled the very disappointing situation – he responded constructively, acknowledged but defused the outrage felt by some in the group and discouraged them from filing complaints or lawsuits. Mr. Lewis was respectful in his dealings with prison officials on the matter as well.

This year, as soon as DeAndre Lewis was transferred to the medium security institution at FCI Terre Haute where Mr. Roloff now works, the Chaplain immediately offered him the Chapel Orderly job. He supports a sentence reduction for Mr. Lewis.

Deandre Lewis started a program called "Stand Down," a Chapel support group for inmates to explore ways to prevent physical confrontations and violence. The group focuses on strategies for staying calm, checking tone, and avoiding clashes in the first place. It also helps inmates to study for and earn their G.E.D.s, remain connected with families (especially their children), and emphasizes the importance of spirituality.

In Elementary and Middle school, Mr. Lewis struggled academically. His home life was so unstable that he often did not begin attending until mid-September and frequently missed Fridays and Mondays.[2] Despite these barriers, he has worked extremely hard to earn his GED, complete numerous education and personal development classes, acquire a trade certificate (he completed the UNICOR program to be certified in soldering), and maintain employment throughout his time in the Bureau of Prisons.

---

[2] School Records, 1987 – 1993.

2

To Whom It May Concern,

This letter is in support of a possible sentence reduction for De'Andre Lewis 24956-044. I first met Mr. Lewis back in 2012-2014 at U.S.P Pollock and now recently connected with him here at the F.C.I. Pollock. During these times of knowing him he has shown me nothing but an upright character and a tremendous individual. In our daily contacts with each other the respect and appreciation he exudes towards staff members as well as other inmates is definitely rare.

Mr. Lewis has shown me he is a changed man not the adolescent he once was. He stays in education by programming himself and helping others to become better. He even let me know of a program he started through the chapel department called, "Stand Down." It helps explore ways to prevent physical confrontation and violence. His group focuses on strategies for staying calm, checking tone and avoiding clashes. This program also helps inmates study for their G.E.D

In all my time with the bureau of prisons I have never backed a person for early release or a second chance pertaining to their freedom until now. Mr. Lewis is a remarkable person; someone I would trust as a neighbor. If incarceration is for correction, then it has served its purpose in Mr. Lewis's life. If it's for punishment, then society has been served its justice as well. I hope that this letter may help in granting a deserving person such as Mr. Lewis a chance at early release.

Sincerely,

Tyree L. Bradley



# U. S. Department of Justice

## Federal Bureau of Prisons

### Federal Correctional Complex

---

*Office of the Warden*                                    *Pollock, LA*

November 8, 2024

MEMORANDUM FOR   To whom it may concern

FROM:            L. Myles, Senior Officer Specialist

SUBJECT:         Lewis, Deandre

            Mr. Deandre Lewis has been in custody of the Bureau of Prison since October of 1998. In that period, he has not become a better criminal but instead he has become a better man. He has numerous accolades from different programs such as Release Prep Program, VT Business Management, and Drug Education just to name a few. He programs with in the Education program at FCI Pollock as a tutor. Having those accolades and certificates mean a lot to an individual that is growing to be a better person, but they fail in comparison to the model inmate that he is within the unit. After working around Mr. Lewis observing how he cohabitates with younger inmates by being a positive influence. That influence comes from working out on the recreation yard to helping within the unit with schoolwork and the cleanliness he radiates for the unit. I have observed Mr. Lewis giving advice to different ethnic groups on handling different situations with it pertaining to life choice and legal problems. I believe he will be a great influence for the communities beyond these prison walls. He shows a great admiration on Prison Reform for

better programs to help the recidivism. Mr. Lewis could be a difference maker in the community on keeping the youth from following his footsteps prior to his growth as a man. Thanks in advance.



FREEDOM FOREVER/USA

**UNITED STATES POSTAL SERVICE.**

*Retail*

UNITED STATES POSTAL SERVICE.

## US POSTAGE PAID

**$0.00**

Origin: 71467
11/26/24
2171761467-08

### PRIORITY MAIL®

0 Lb 11.30 Oz

**RDC 03**

EXPECTED DELIVERY DAY: 11/30/24

C002

SHIP TO:
750 MISSOURI AVE
EAST SAINT LOUIS IL 62201-2954

**USPS TRACKING® #**



9505 5158 7777 4331 3051 53

FROM:

24956-044
DeAndre Lewis
F.C.I Pollock
P.O. Box 4050
Pollock, LA 71467

**MAIL CLEARED
US MARSHALS**   **RECEIVED**

DEC 2 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
E. ST. LOUIS OFFICE

TO:

To schedule free
Package Pickup,
scan the QR code.



USPS.COM/PICKUP

↔ 24956-044 ↔
Circuit Clerk
U.S. District OF Illinois
750 Missouri AVE
E Saint Louis, IL 62201
United States

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2020. All rights reserved.



c only. ✕ For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.